UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BERNARD E. BULWER, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 23-11097-BEM |
| ) | |
| ECHONOUS, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER ON**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**MURPHY, J.**

Plaintiff Bernard E. Bulwer, M.D., has brought this action against Defendant EchoNous, Inc., a medical technology corporation, for unjust enrichment and quantum meruit. Dr. Bulwer alleges that EchoNous failed to compensate him for the expertise, services, and materials he provided during the course of his affiliation with EchoNous. EchoNous now moves for summary judgment, arguing that: (1) Dr. Bulwer's claims are in part preempted by federal copyright law; (2) Dr. Bulwer's remaining claims are foreclosed by the parties' Independent Contractor Agreement; and (3) there is no genuine issue of material fact for trial. For the reasons set forth below, EchoNous's motion for summary judgment will be granted.

**I.  Background**

   **A.  Factual Background**

Dr. Bulwer is an echocardiologist and medical illustrator who holds copyrights over a large collection of over one million images and derivative works and many books. Dkt. 39 (Defendant

EchoNous's Statement of Undisputed Material Facts, or "DSOF") ¶¶ 1, 5.[1]  In March 2020, Dr. Bulwer contacted the then-CEO of EchoNous, Kevin Goodwin, via LinkedIn and thereafter began communicating with EchoNous employees regarding software used in EchoNous's ultrasound device, Kosmos. *Id.* ¶¶ 4, 6.  On June 29, 2020, Dr. Bulwer, for the first time, emailed a link to Goodwin and other EchoNous employees containing copyrighted medical images and digital versions of one of Dr. Bulwer's copyrighted books on echocardiography. *Id.* ¶¶ 7–8.

On September 17, 2020, Dr. Bulwer and Goodwin exchanged text messages, at the end of which Dr. Bulwer stated, "I'll set up an invoice for consultation-retainer@ 5k monthly, start date Aug. 1[.]" *Id.* ¶ 13.  EchoNous paid Dr. Bulwer's invoices for $5,000 each month for the next thirteen months. *Id.* ¶ 14.  The parties dispute the exact nature of the services and materials Dr. Bulwer provided to EchoNous during this period. *Id.* ¶ 15; Dkt. 49 ¶ 15.

Approximately one year later, on October 26, 2021, Dr. Bulwer and EchoNous entered into an Independent Contractor Agreement ("ICA"). DSOF ¶¶ 16, 19.  When he received the ICA from EchoNous's General Counsel, Dr. Bulwer responded that he was "happy with the document, and w[ould] sign," but wanted to "clarify" two sections: "5. INTELLECTUAL PROPERTY RIGHTS" and "SCHEDULE 1. 4. STOCK OPTIONS." *Id.* ¶ 17.  Specifically, Dr. Bulwer stated: "my wish is for these two items to be handled as an addendum, since there are details to spell out, so that I can expedite signing by tomorrow." *Id.*  No addendum was ever exchanged or executed by the parties. *Id.* ¶ 18.  Pursuant to the ICA, Dr. Bulwer was paid $15,000 per month plus expenses. *Id.* ¶ 29.  EchoNous paid every invoice that Dr. Bulwer submitted under the ICA, from October 2021 to November 2022. *Id.*; Dkt. 40-6.

---

[1] Unless otherwise noted, facts are taken from the DSOF, Dkt. 39, as agreed to in Plaintiff's Statement of Material Facts, Dkt. 49.

On November 22, 2022, the new CEO of EchoNous, Graham Cox, notified Dr. Bulwer that EchoNous would not be renewing the ICA and requested an invoice for November 2022, the last month for which Dr. Bulwer would be paid. DSOF ¶ 22. That same day, Dr. Bulwer emailed Cox the following:

> As I outlined in my previous email, I have considerable intellectual property that is currently being used by EchoNous in its educational and training outreach. These number in the hundreds, and they currently reside on several folders on the EchoNous company drives. This does not include scores of graphic designs that I made for the Kosmos software, TRIO 2.0. The software/engineering/Al team responsible can speak to these facts. Neither of these are works for hire. These are my US copyright registered works. Therefore, can I ask that we pursue mechanisms to evaluate, address and amicably resolve these issues above?

*Id.* ¶ 24.

On December 23, 2022, Dr. Bulwer sent an email to Cox which, *inter alia*, (1) referenced Dr. Bulwer's previous exchange with EchoNous's then-General Counsel regarding a potential addendum to the ICA; (2) listed some of the "hundreds" of Dr. Bulwer's copyrighted and derivative works provided to and used by EchoNous; (3) stated that "[g]uidelines and pricing for medical/technical illustrations that are customary and reasonable include those published by the American Association of Medical Illustrators, leading publishers, e.g. Elsevier, and academic medical institutions, e.g. The Ohio State University"; and (4) stated that "[t]o arrive at the associated costs/charges referred to above, there needs to be a desire by both parties to exercise good faith and pursue a path to identify and quantify the copyrighted graphical material (medical illustrations technical drawings) involved, the reasonable market value for such, plus a formula for licensing their continued use by EchoNous—without resorting to third-party involvement." Dkt. 40-13 (emphasis removed).

**B.     Procedural Background**

Dr. Bulwer filed this action on May 16, 2023, asserting claims for unjust enrichment and quantum meruit under Massachusetts law for the period from June 2020 to October 25, 2021. Dkt. 1.  EchoNous moved for summary judgment, Dkt. 37, and a hearing was held on December 1, 2025.  At the hearing, the parties disputed whether all the materials at issue fall within the subject matter of copyright.  Dkt. 64 at 23:2–17, 34:6–35:6.  The Court therefore permitted the parties to submit supplemental briefing on that question.  On December 17, 2025, Dr. Bulwer submitted a supplemental opposition to EchoNous's motion for summary judgment.  Dkt. 63.  EchoNous filed a response on December 30, 2025.  Dkt. 68.

**II.     Standard of Review**

Summary judgment will only be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Grogan v. All My Sons Bus. Dev. LLC*, 552 F. Supp. 3d 142, 145 (D. Mass. 2021) (quoting Fed. R. Civ. P. 56(a)).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  "To succeed [on a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Grogan*, 552 F. Supp. 3d at 145 (quoting *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990)).

The Court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).  However, "[t]he nonmoving party cannot fend off summary judgment unless it makes a competent demonstration that *every essential element* of its claim or defense is at least trialworthy." *Price v.*

4

*Gen. Motors Corp.*, 931 F.2d 162, 164 (1st Cir. 1991) (emphasis in original). "Where the non-moving party bears the ultimate burden of proof, the non-moving party 'must present definite, competent evidence to rebut the motion.'" *Satanic Temple, Inc. v. City of Bos.*, 684 F. Supp. 3d 21, 30 (D. Mass. 2023) (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991)), *aff'd*, 111 F.4th 156 (1st Cir. 2024).

### III. Discussion

#### A. Waiver

The Court must first determine whether EchoNous waived its preemption argument by failing to plead the defense of copyright preemption in its answer. As a threshold matter, copyright preemption is an affirmative defense. *See Prime Healthcare Servs. - Landmark, LLC v. CIGNA Health & Life Ins. Co.*, 2024 WL 361368, at * 2 (D.R.I. Jan. 31, 2024) ("Defensive preemption, as its name implies, is a federal affirmative defense."); *Fryer v. A.S.A.P. Fire & Safety Corp.*, 658 F.3d 85, 90 (1st Cir. 2011) (distinguishing between jurisdictional preemption defenses that, if successful, "would dictate the choice of forum and thereby deprive the reviewing court of subject matter jurisdiction," and waivable preemption defenses that "merely dictate[] a different choice of law" (citing *Int'l Longshoremen's Ass'n v. Davis*, 476 U.S. 380, 390–91 (1986)); *Wolf v. Reliance Standard Life Ins. Co.*, 71 F.3d 444, 449 (1st Cir. 1995) (concluding ERISA preemption is an affirmative defense because it serves as "a bar to the right of recovery even if the general complaint were more or less admitted to" (quoting *Jakobsen v. Mass. Port Auth.,* 520 F.2d 810, 813 (1st Cir. 1975))).

"Generally speaking, failure to plead an affirmative defense results in a waiver of the defense and the exclusion of all evidence relevant to it." *Conjugal P'ship v. Conjugal P'ship*, 22 F.3d 391, 400 (1st Cir. 1994); *see also* Fed. R. Civ. P. 8(c)(1) ("[A] party must affirmatively state any avoidance or affirmative defense."). However, "[t]he purpose of Rule 8(c) is to give the court

and the other parties fair warning that a particular line of defense will be pursued." *Williams v. Ashland Eng'g Co.*, 45 F.3d 588, 593 (1st Cir. 1995), *abrogated on other grounds by*, *Carpenters Loc. Union No. 26 v. U.S. Fid. & Guar. Co.*, 215 F.3d 136 (1st Cir. 2000); *see also Wolf*, 71 F.3d at 449 ("An affirmative defense must be pleaded in the answer in order to give the opposing party notice of the defense and a chance to develop evidence and offer arguments to controvert the defense."). For that reason, courts may allow parties to raise affirmative defenses after the answer stage if doing so would not unfairly prejudice the other party. *See Davignon v. Clemmey*, 322 F.3d 1, 15 (1st Cir. 2003) (recognizing an exception to the Fed. R. Civ. P. 8(c)(1) rule where "the defendant asserts [the affirmative defense] without undue delay and the plaintiff is not unfairly prejudiced by any delay").

Here, Dr. Bulwer doubtless had "fair notice" that questions of copyright and intellectual property undergird this case. *See, e.g.*, Dkt. 40-13; Dkt. 50-1 at 87:5–10, 214:3–8. To the extent Dr. Bulwer was unable to fully develop the question of which materials fell within the subject matter of copyright, as argued at the summary judgment hearing, Dkt. 64 at 33:14–35:6, any prejudice was cured by the opportunity to submit supplemental briefing on precisely that issue, *see* Dkt. 63 (containing supplemental briefing by Dr. Bulwer including a total of nearly a thousand pages of memoranda and exhibits). Accordingly, EchoNous has not waived the defense of copyright preemption.

    **B.**    <u>**Copyright Preemption**</u>

The Federal Copyright Act expressly preempts equivalent state law claims. *See* 17 U.S.C. § 301(a) ("[A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . are governed exclusively by this title."). "[C]laims are preempted if the following two conditions are met: (1) the work of authorship in which rights are claimed must fall within the subject matter of copyright as defined by §§ 102 and 103; and (2) the

state-created right must be equivalent to one of the exclusive rights created by the Copyright Act." *Jalbert v. Grautski*, 554 F. Supp. 2d 57, 75 (D. Mass. 2008). A state-created right is equivalent "[i]f the plaintiff's state-law claim seeks to protect a matter within the scope of copyright law." *Id.* (citation omitted).

Dr. Bulwer first claimed unjust enrichment and quantum meruit based on EchoNous's "failure to compensate Dr. Bulwer for the substantial and valuable expertise, services, and materials he provided." Dkt. 1 ¶¶ 1–2. In response to EchoNous's argument on summary judgment that Dr. Bulwer's claims were preempted by federal copyright law, Dkt. 38 at 6–10, Dr. Bulwer argued that his claims are qualitatively different than federal copyright claims and that not all the materials provided to EchoNous are copyrightable, Dkt. 48 at 3–10. Along with his supplemental briefing, Dr. Bulwer submitted materials he argued fell outside the subject matter of copyright, including presentations, training materials, manuals, and reference guides, and a textbook. Dkts. 63-3, 63-5, 63-8, 63-10, 63-13, 63-14, 63-15.

1. **Subject Matter of Copyright**

The Court must first consider whether the materials at issue fall within the subject matter of copyright. *Jalbert*, 554 F. Supp. 2d at 75. "A work need not consist entirely of copyrightable material in order to meet the subject matter requirement, but instead need only fit into one of the copyrightable categories in a broad sense." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004). Section 102 of the Copyright Act authorizes copyright protection of "original works of authorship fixed in *any* tangible medium of expression" and Section 103 extends that protection to "compilations and derivative works." 17 U.S.C. §§ 102(a), 103(a) (emphasis added). Court have recognized that myriad materials fall within the "subject matter of copyright," even those that include elements that are not copyrightable. *See Tingley Sys., Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 104 (D. Mass. 2001) (computer programs); *Rubin v.*

7

*Brooks/Cole Publ'g Co.*, 836 F. Supp. 909, 923 (D. Mass. 1993) (psychological instruments); *R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1146–47 (10th Cir. 2009) (reports including uncopyrightable material); *Harper & Row Publishers, Inc. v. Nation Enters.*, 723 F.2d 195, 200 (2d Cir. 1983) (memoirs including uncopyrightable material), *rev'd on other grounds*, 471 U.S. 539 (1985). The materials at issue here—both images and written material, including compilations of noncopyrightable material—likewise fall squarely within the subject matter of copyright and satisfy the first prong of the copyright preemption inquiry.

### 2. Equivalent Rights

The Court next considers whether the right Dr. Bulwer seeks to vindicate is equivalent to an exclusive right protected by the Copyright Act. *Jalbert*, 554 F. Supp. 2d at 75. "[I]f a state cause of action requires an extra element, beyond mere copying, preparation of derivative works, performance, distribution or display, then the state cause of action is *qualitatively different* from, and not subsumed within, a copyright infringement claim and federal law will not preempt the state action." *Tingley*, 152 F. Supp. 2d at 104–05 (emphasis in original) (quoting *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1164 (1st Cir.1994), *abrogated on other grounds by*, *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010)). "The extra element must be qualitatively different from the rights protected by copyright law" and "must be one which changes the nature of the action so that it is qualitatively different from a copyright infringement claim." *Id*. at 105 (citation omitted). Elements that "merely alter the scope of the action and not its nature" are insufficient to allow a claim to survive preemption. *Id.* (citing *Rubin*, 836 F. Supp. at 923).

Unjust enrichment and quantum meruit claims, when based on the same allegations as accompanying copyright claims, are preempted by copyright law. *See Feldman v. Twentieth Century Fox Film Corp.*, 723 F. Supp. 2d 357, 368 (D. Mass. 2010); *Tingley*, 152 F. Supp. 2d at 112 (explaining that a quantum meruit claim, "which alleges the wrongful acquisition and use of

8

the [plaintiff's] software and demands compensation for such use and for the conferred benefits, does not qualitatively differ from a copyright infringement claim"). A plaintiff bringing these allegations generally "seeks to recover benefits which [the defendant] derived from its unauthorized use and copying of the copyrighted" material. *Tingley*, 152 F. Supp. 2d at 112. Such claims directly implicate the exclusive rights protected by the Copyright Act. *See* 17 U.S.C. § 106 (granting copyright owners exclusive rights to reproduce copyrighted work or prepare derivative works based upon the copyrighted work).

Here, however, Dr. Bulwer seeks to recover for the *authorized* use of his works. For the purposes of copyright preemption, an unjust enrichment or quantum meruit claim based on authorized use is materially different from one based on unauthorized use. The right Dr. Bulwer seeks to vindicate is his right to be fairly paid for the use of his materials. *See Levine v. Landy*, 832 F. Supp. 2d 176, 188 (N.D.N.Y. 2011) ("Whether termed a right to 'payment,' 'royalties,' 'compensation,' 'proceeds,' or 'remuneration,' plaintiff is not attempting to vindicate rights protected by the Copyright Act."). Dr. Bulwer "does not seek to vindicate his rights to distribute, publish, and/or reproduce" his materials, and therefore his claimed rights are not equivalent to the rights protected under federal copyright law. *Id*.

Accordingly, Dr. Bulwer's claims are not preempted by federal copyright law. However, EchoNous argues in the alternative that Dr. Bulwer cannot recover under a theory of unjust enrichment because there was a valid contract in place and because there is no genuine issue of material fact. The Court takes each argument in turn.

  C. <u>Contract</u>

A plaintiff claiming unjust enrichment or quantum meruit must demonstrate, "(1) that he conferred a measurable benefit upon the [defendant]; (2) that he reasonably expected compensation from [the defendant]; and (3) that the [defendant] "accepted the benefit with the

9

knowledge, actual or chargeable, of [his] reasonable expectation." *Guldseth v. Fam. Med. Assocs. LLC*, 45 F.4th 526, 540 (1st Cir. 2022) (internal quotation marks omitted). However, "[a]n equitable claim for unjust enrichment is not available when the claiming party has an adequate remedy at law." *Scarpaci v. Lowe's Home Ctr., LLC*, 212 F. Supp. 3d 246, 253 (D. Mass. 2016). An adequate remedy at law refers to a legal theory "by which the plaintiff may seek recovery; it does not, however, require the existence of a legal theory under which the plaintiff is ultimately successful on obtaining a recovery." *Id.* at 253 n.7. More specifically, as relevant to this case, "[a] plaintiff is not entitled to recovery on an unjust-enrichment or quantum-meruit theory where there is a valid contract that covers the same subject matter and defines the obligations of the parties." *Guldseth*, 45 F.4th at 541.

The parties disagree as to whether the ICA governed the period before the ICA was effective. The Court need not decide that question. Prior to and independent of the ICA, in September 2020, Dr. Bulwer entered into a contract with then-CEO Goodwin for $5,000 per month as a "consultation-retainer." DSOF ¶ 13. Neither party disputes that Dr. Bulwer submitted monthly invoices for $5,000 for consultancy services provided beginning August 1, 2020, until the ICA was effectuated, or that EchoNous paid every invoice that Dr. Bulwer submitted. *Id.* ¶¶ 13, 14. Dr. Bulwer stated that his "services prior to the ICA consisted of . . . creating new content for the KOSMOS cardio measurements and calculations and new content for the purpose of resigning the TRIO software, and creating a new training program for nurses using the KOSMOS device and TRIO software." Dkt. 50 ¶ 8. Dr. Bulwer likewise contended that "a large portion of the materials provided to Defendant were the result of requested services he rendered." Dkt. 49 ¶ 37; Dkt. 50 ¶ 14. Further, it is undisputed that Dr. Bulwer "chose the images and materials that he provided to EchoNous in connection with his consulting work." DSOF ¶ 10.

In sum, Dr. Bulwer provided consulting services, which included the provisioning of the materials at issue, to EchoNous in exchange for $5,000 per month. This contract "defines the obligations of the parties as to the matters within its scope, displacing to that extent any inquiry into unjust enrichment." *Guldseth*, 45 F.4th at 541 (quoting Restatement (Third) of Restitution and Unjust Enrichment § 2 (2011)). Accordingly, Dr. Bulwer is not entitled to recover under a theory of unjust enrichment or quantum meruit.

Even assuming *arguendo* that some materials at issue were *not* subject to the parties' pre-ICA contract, Dr. Bulwer has failed to plausibly establish the elements of unjust enrichment or quantum meruit. "Unjust enrichment provides an equitable stopgap for occasional inadequacies in contractual remedies at law by mandating that [a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 234 (1st Cir. 2005) (internal quotation marks omitted). "Whether or not receipt of a benefit is unjust turns on the reasonable expectations of the parties." *Guldseth*, 45 F.4th at 540. Even drawing reasonable inferences in Dr. Bulwer's favor, as required at the summary judgment stage, *Noonan*, 556 F.3d at 25, he has failed to "point to definite and competent evidence showing the existence of a genuine issue of material fact" regarding the parties' reasonable expectations, *Perez v. Lorraine Enters. Inc.*, 769 F.3d 23, 30 (1st Cir. 2014).

It is undisputed that the parties entered into a valid contract during the relevant period, with which both parties complied. Dr. Bulwer conceded at his deposition that when he first emailed a link containing images to EchoNous employees, he did not express in that email that he expected to be compensated. Dkt. 50-1 at 66:7–16. Dr. Bulwer contends instead that he and Goodwin "had an understanding" before he sent materials to EchoNous for the first time in June 2020 that Dr. Bulwer would be paid for his images. *Id.* at 67:12–70:8. Goodwin acknowledged that

11

intellectual property would be discussed later: "[I]t wasn't a yes, it wasn't a no. There was an implication that he would want to talk about it for certain." Dkt. 50-2 at 43:23–44:7. However, these facts do little to support Dr. Bulwer's claims, because shortly thereafter Dr. Bulwer and Goodwin entered into a valid contract governing Dr. Bulwer's relationship with EchoNous. *See Zarum v. Brass Mill Materials Corp.*, 334 Mass. 81, 85 (1956) ("The law will not imply a contract where there is an existing express contract covering the same subject matter.").

Dr. Bulwer tries to supplement his claims by pointing to actions he took over a year later, after the ICA was not renewed in November 2022. The fact that he later expressed wanting an addendum governing intellectual property added to a subsequent contract does little to bolster his claims concerning the period from June 2020 to October 25, 2021. Indeed, it is undisputed that the ICA was not yet in effect during that period and that he never provided EchoNous with a proposed addendum to the ICA. DSOF ¶¶ 18, 33. What is more, by Dr. Bulwer's own admission, he had no problem with EchoNous's using his materials until Cox became CEO and declined to renew the ICA. Dkt. 50-1 at 258:21–261:4. In sum, Dr. Bulwer has put forth insufficient facts to suggest he reasonably expected additional compensation for the period from June 2020 to October 25, 2021 such that failing to allow him to recover would be "unconscionable." *Tamposi v. Denby*, 974 F. Supp. 2d 51, 63 (D. Mass. 2013) (citation omitted).

> [W]hile it is said that a defendant is liable if equity and good conscience requires, this does not mean that a moral duty meets the demands of equity. Unjust enrichment is not a boundless doctrine, but is, instead, narrower, more predictable, and more objectively determined than the implications of the words 'unjust enrichment.'

*Id.* (cleaned up).

### IV.    Conclusion

For the foregoing reasons, EchoNous's motion for summary judgment, Dkt. 37, is GRANTED.

**So Ordered.**

                                                               /s/ Brian E. Murphy
                                                               Brian E. Murphy
Dated:  January 22, 2026                    Judge, United States District Court